UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGEI DOBROVOLSKII, Petitioner, v. LAROSE, Respondent. | Case No.: 26-cv-4584-RSH-JLB **ORDER DENYING PETITION FOR HABEAS CORPUS** |

On August 11, 2026, petitioner Sergei Dobrovolskii, proceeding pro se, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 (the "Petition"). ECF No. 1. Petitioner, a citizen of Russia, is currently detained in the custody of U.S. Immigration and Customs Enforcement ("ICE") at the Otay Mesa Detention Center in San Diego, California. ECF Nos. 1-2 at 1. He contends that his continued immigration detention without an individualized bond hearing has become unconstitutionally prolonged. *Id.* at 1. Petitioner also challenges ICE's transfer of his wife to another detention facility, alleging that this transfer interfered with their access to counsel and impaired their ability to prepare their immigration case. *Id.* at 2. For the reasons set forth below, the Court denies the Petition.

## I. BACKGROUND

On March 29, 2026, Petitioner and his wife entered the United States from Mexico through the Otay Mesa Port of Entry. ECF No. 4-1 at 3. Petitioner requested political asylum and was taken into custody and placed into removal proceedings. *Id.* at 3, 6.

According to Petitioner, ICE subsequently transferred him and his wife to the Otay Mesa Detention Center on April 3, 2026. ECF No. 1-2 at 1. On April 24, 2026, while their immigration proceedings remained pending, ICE transferred Petitioner's wife to the California City Detention Center. *Id.*

On July 1, 2026, an immigration judge denied Petitioner's application for asylum. *Id.* The immigration court's written order identifies Petitioner as a rider to his wife's proceeding and directs removal to Russia. ECF No. 4-1 at 8–11. Petitioner appealed the decision to the Board of Immigration Appeals ("BIA") on July 14, 2026 and the appeal remains pending. ECF No. 1-2 at 1.

## II. LEGAL STANDARD

Title 28 of the U.S. Code, Section 2241, provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). A detainee bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3).

## III. ANALYSIS

Respondents represent, and Petitioner does not dispute, that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii), which provides that noncitizens found to have a credible fear of persecution are subject to mandatory detention pending consideration of an asylum application. *See* ECF No. 4 at 3; 8 U.S.C. § 1225(b)(1)(B)(ii) ("If the officer determines at the time of the interview that an alien has a credible fear of persecution . . . the alien shall be detained for further consideration of the application for asylum."). The issue presented here is whether, in the circumstances of this case and at this point in time, applying this mandatory detention regime violates Petitioner's due process rights.

### A. Jurisdiction

Respondents first challenge this Court's jurisdiction to hear the Petition, relying on 8 U.S.C. § 1252(g). ECF No. 4 at 3–4. That provision states that, except as otherwise provided in Section 1252, and notwithstanding any other provision of law including 8 U.S.C. § 2241, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Respondents argue that because Petitioner challenges his detention during removal proceedings, that detention "arises from" the Department of Homeland Security's decision to commence such proceedings. ECF No. 4 at 3–4.

The Supreme Court has interpreted the jurisdiction-stripping provision in Section 1252(g) narrowly, limiting it to "three discrete actions": the "'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999) (quoting 8 U.S.C. § 1252(g)). The Supreme Court noted that "[t]here are of course many other decisions or actions that may be part of the deportation process." *Id.* In a later decision, the Court explained that it did not interpret Section 1252(g) "to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, [the Court] read the language to refer to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018).

Here, there is no indication Petitioner is challenging DHS's decision to commence proceedings, the adjudication of his removal case, or an action to execute his removal order. There is also no indication he seeks to litigate in this Court questions of whether he is removable or whether he is entitled to relief from removal. Instead, the relief Petitioner seeks here is a bond hearing at which his release may be considered by an immigration judge. ECF No. 1 at 7. The Court concludes that Petitioner's claim is not barred by Section 1252(g).

///

**B. Whether Petitioner Has a Due Process Claim**

Respondents next argue that under the Supreme Court's decision in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), Petitioner has no due process rights beyond those that Congress has provided, and that his due process claim therefore fails. ECF No. 4 at 6–7. In *Thuraissigiam*, the Supreme Court rejected a habeas petitioner's argument that the due process clause conferred rights to challenge his expedited removal beyond those established by Congress, stating that "an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." 591 U.S. at 107. The petitioner in that case had "attempted to enter the country illegally and was apprehended just 25 yards from the border." *Id.* The Supreme Court determined that the "political department of the government" had plenary authority to admit or exclude aliens seeking initial entry, and thus "an alien in respondent's position has only those rights regarding admission that Congress has provided by statute." *Id.* at 139–40.

Following the Supreme Court's decision in *Thuraissigiam*, some district courts have adopted Respondents' reasoning to dismiss or deny habeas petitions in the context of arriving aliens subject to mandatory detention under Section 1225(b). *See Petgrave v. Aleman*, 529 F. Supp. 3d 665, 679 (S.D. Tex. 2021) ("As far as Petitioner is concerned, whatever procedure Congress has authorized is sufficient due process."); *Gonzales Garcia v. Rosen*, 513 F. Supp. 3d 329, 536 (W.D.N.Y. 2021) ("Petitioner is on the threshold of initial entry into the United States and . . . he accordingly is not entitled to procedural protections beyond those provided by statute.").

Most courts have ruled otherwise. *See Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 25-cv-98-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("Although the Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1225(b) … 'essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'") (quoting *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL

5968089, at *6 (W.D. Wash. May 23, 2019)); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."). This Court agrees with the majority position that a person detained under Section 1225(b) may assert a due process challenge to prolonged mandatory detention without a bond hearing.

This Court likewise agrees with those district courts that interpret *Thuraissigiam* as circumscribing an arriving alien's due process rights to *admission*, rather than limiting that person's ability to challenge *detention*. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 825 (W.D. Pa. 2025) ("Nowhere in [*Thuraissigiam*] did the Supreme Court suggest that arriving aliens being held under § 1225(b) may be held indefinitely and unreasonably with no due process implications, nor that such aliens have no due process rights whatsoever."); *Hernandez v. Wofford*, No. 25-cv-986-KES-CDB (HC), 2025 WL 2420390, at *3 (E.D. Cal. Aug. 21, 2025) ("Although the Supreme Court has described Congress's power over the 'policies and rules for exclusion of aliens' as 'plenary,' and held that this court must generally 'defer to Executive and Legislative Branch decisionmaking in that area,' it is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority'—through detention or otherwise.") (citations omitted); *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("The holding in *Thuraissigiam* does not foreclose Plaintiffs' due process claims which seek to vindicate a right to a bond hearing with certain procedural protections.").

Respondents also argue that a much older case, *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 207–09 (1953), establishes that arriving aliens subject to a mandatory detention scheme, regardless of the length of their detention, never become entitled by the due process clause to a bond hearing. ECF No. 4 at 6. This Court does not read *Mezei* to establish such a proposition. *Mezei* involved a noncitizen who had been "permanently excluded from the United States on security grounds but [who was] stranded in his temporary haven on Ellis Island because other countries [would] not take him back." 345

U.S. at 207. In 1950, the Attorney General determined, pursuant to emergency regulations that based on certain confidential information, the noncitizens should be excluded from the United States "for security reasons." *Id.* at 208-10, 214–15. The Supreme Court rejected the noncitizen's constitutional challenge, citing "considerations" of "danger to the national security":

> Thus we do not think that respondent's continued exclusion deprives him of any statutory or constitutional right. It is true that resident aliens temporarily detained pending expeditious consummation of deportation proceedings may be released on bond by the Attorney General whose discretion is subject to judicial review. By that procedure aliens uprooted from our midst may rejoin the community until the Government effects their leave. *An exclusion proceeding grounded on danger to the national security, however, presents different considerations*; neither the rationale nor the statutory authority for such release exists. *Ordinarily to admit an alien barred from entry on security grounds nullifies the very purpose of the exclusion proceeding* ….

*Id.* at 215 (citations omitted and emphasis added).

This Court agrees with those courts that distinguish the constitutional holding in *Mezei* as addressing the national security considerations presented in that case. *See Rosales-Garcia v. Holland*, 322 F.3d 386, 413–14 (6th Cir. 2003) ("[T]he *Mezei* Court explicitly grounded its decision in the special circumstances of a national emergency and the determination by the Attorney General that Mezei presented a threat to national security."); *Lett v. Decker*, 346 F. Supp. 3d 379, 386 (S.D.N.Y. 2018) ("*Mezei* may compel the conclusion that arriving aliens already excluded on national security grounds are not entitled to a bond hearing prior to their arranged deportation. However, *Mezei* does not compel the categorical conclusion that all arriving aliens may be subject to prolonged confinement without a bond hearing."); *Kydyrali*, 499 F. Supp. 3d at 772 (finding *Mezei* inapposite to the issue of whether prolonged detention without a bond hearing violates due process); *Rash v. LaRose*, No. 26-cv-8-LL-DEB, 2026 WL 249324, at *4 (S.D. Cal. Jan. 30, 2026) (same). Here, in contrast, neither the Attorney General nor any other government

component has made a determination that Petitioner should be excluded on grounds of national security; Petitioner is not seeking to circumvent such a determination by obtaining release into the United States. Petitioner is merely seeking a bond hearing.

The Court concludes that it has authority to review whether Petitioner's detention, pursuant to a scheme of mandatory detention, has become unconstitutionally prolonged.

**C. Whether Petitioner's Detention is Prolonged in Violation of Due Process**

In determining whether Petitioner's detention has become prolonged, the Court applies a six-factor balancing test used by some district courts. *See Kydyrali*, 499 F. Supp. 3d at 773–74; *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019). That test considers: (1) the total length of detention to date; (2) the likely duration of future detention; (3) conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal. *See Kydyrali*, 499 F. Supp. 3d at 773–74. Of these factors, the first—the length of detention—is the "most important." *Id.* at 774 (quoting *Banda*, 385 F. Supp. 3d at 1118).

Here, Petitioner has been detained for just over five months, a period shorter than those this Court has typically considered unduly prolonged. This factor therefore weighs against finding a due process violation. The conditions of Petitioner's confinement, however, weigh in his favor. Courts in this District have found that conditions at the Otay Mesa Detention Center, where Petitioner is detained, are "indistinguishable from penal confinement." *Kydyrali*, 499 F. Supp. 3d at 773; *Hoyos Amado v. U.S. Dep't of Justice*, No. 25-cv-2687-LL-DDL, 2025 WL 3079052, at *6 (S.D. Cal. Nov. 4, 2025). This factor weighs in Petitioner's favor.

The likely duration of Petitioner's future detention is uncertain. Although the Court cannot predict with precision how long his pending BIA appeal will take, Petitioner may face a substantial additional period of detention. *See Thompson v. Mullin*, No. 26-CV-2743 JLS (BJW), 2026 WL 1697635, at *3 (S.D. Cal. June 11, 2026) (noting that an appeal to the BIA "may take months," while a subsequent appeal to the Ninth Circuit "may take

years"); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1119 (W.D. Wash. 2019) (observing that an appeal of an immigration judge's removal order to the BIA "may take up to two years or longer"). The record does not attribute any material delay in the removal proceedings to either Petitioner or the Government. The fourth and fifth factors are therefore neutral. Finally, the present record does not permit the Court to assess the likelihood that the proceedings will culminate in a final order of removal. The sixth factor is likewise neutral.

Considering Petitioner's length of detention to date in connection with the other applicable factors, the Court determines that Petitioner's detention has not yet become unduly prolonged in violation of his due process rights. Petitioner has not established that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). As to Petitioner's request that the Court "assist in facilitating" his wife's transfer back to the Otay Mesa Detention Center, there is no basis for ordering such relief in connection with a petition under § 2241. Accordingly, the Court also denies this request.

## III. CONCLUSION

For the foregoing reasons, the Petition is **DENIED**. Petitioner's request to appoint counsel is likewise **DENIED** as Petitioner has not shown "exceptional circumstances" warranting such an appointment here. *See Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004) (stating that the decision to appoint counsel under 28 U.S.C. § 1915(e)(1) is within "the sound discretion of the trial court and is granted only in exceptional circumstances"). The Clerk of Court is directed to close the case.

**IT IS SO ORDERED.**

Dated: September 3, 2026

Hon. Robert S. Huie
United States District Judge